*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LORIE JO WELSH,

        Plaintiff-Appellee,

v

ARIANNA WELSH, THOMAS WELSH IV, and
TORY S. WELSH,

        Defendants-Appellants,

and

ERIN WELSH,

        Defendant.

UNPUBLISHED
December 15, 2025
1:55 PM

No. 370896
Macomb Circuit Court
LC No. 2022-004138-CZ

Before: SWARTZLE, P.J., and O'BRIEN and BAZZI, JJ.

PER CURIAM.

Defendants Ariana Welsh (Ariana), Thomas Welsh IV (Thomas IV), and Tory S. Welsh (Tory) appeal as of right the final judgment entered by the circuit court, confirming an arbitration award in favor of plaintiff, Lorie Jo Welsh. We affirm.

## I. BACKGROUND

This case arises out of a family dispute related to three pieces of property located in Lenox, Michigan. On June 29, 2004, plaintiff, under a land contract, sold her interests in those parcels to defendants, Ariana, Thomas IV, Tory, and Erin Welsh,[1] for $400,000.[2] After making the $40,000

---

[1] Erin is a defendant in this action, but he, unlike the other defendants, is not an appellant.

[2] Plaintiff owned 50% interests in all three parcels, with her brother, nonparty Thomas Welsh III ("Thomas III," the father of Thomas IV), owning the other 50% interests of the properties. The

-1-

deposit, defendants were obligated under the contract to make monthly interest-only payments of $1,500, with the remaining balance of $360,000 being paid in full within four years of the date of the contract. On the day the land contract was executed, plaintiff signed, but did not deliver, three warranty deeds for the three parcels.

In 2006, Thomas III obtained a $250,000 loan, which was secured by a mortgage on Parcel 2.[3] The arbitrator found that plaintiff never received anything from the proceeds of that loan. Although plaintiff never delivered the warranty deed to Parcel 2 to any defendant, the deed was recorded on August 1, 2006. In 2009, "[b]ereft with financial problems," Thomas III filed for bankruptcy. The bankruptcy trustee sold Parcel 1 for $35,000, and plaintiff received $17,500 from that sale. Sometime later, the $250,000 loan was defaulted, and Parcel 2 was lost by foreclosure.

In 2014, well after the four-year deadline for defendants to perform under the 2004 land contract, plaintiff signed another land contract, this time selling Parcel 3 to Erin for $100,000. Erin complied with the terms of the 2014 land contract, and the warranty deed to Erin for Parcel 3 was recorded on April 21, 2021.

Plaintiff ultimately filed a forfeiture action for Parcel 3 in district court on January 13, 2022. The parties thereafter agreed to submit their dispute to arbitration,[4] with retired Judge Mark S. Switalski acting as the arbitrator. The arbitration agreement described the arbitrator's authority, in relevant part, as follows:

> The arbitrator will have the authority to decide any disputed issues that arise related to the Arbitration, including any disputes concerning the interpretation of this Agreement. The arbitrator shall apply Michigan substantive law to all claims and defenses made in this Arbitration.

On June 29, 2022, the arbitrator held an arbitration hearing. The arbitrator issued his decision on July 22, 2022, and decided because defendants did not fulfill their obligation to pay the $360,000 owed to plaintiff, plaintiff was entitled to prevail on her claim of forfeiture, and the amount in the arrears was $367,500 as of January 13, 2022.

Plaintiff filed the instant complaint in circuit court on November 1, 2022, seeking confirmation of the arbitration award and a declaration that the amount necessary to redeem the property was $367,500. Ariana, Tory, and Thomas IV (ATT)[5] answered the complaint and moved

---

three pieces of properly were located fairly close to each other and were referred to as "Parcel 1" for "the vacant lot"; "Parcel 2" for "66375 Forest"; and Parcel 3 for "66525 Forest." Primarily at issue in this case is Parcel 3.

[3] The mortgage was executed by Thomas III and all four defendants.

[4] At the time of the arbitration agreement, there were three pending suits in circuit court and two suits pending in district court. The parties agreed to submit all five cases to the arbitrator.

[5] The arbitrator in his written opinion used the acronym "ATT" to represent Ariana, Thomas IV, and Tory, and we will follow suit.

to vacate or modify the arbitration award.[6]  ATT argued, in pertinent part, that the award should be vacated or modified because the award was "procured by fraud or other undue means."

Plaintiff filed a separate motion to confirm the arbitration award and enter judgment that mirrored the requests in her complaint.  In a supplemental response, plaintiff argued that ATT's motion to vacate should be denied for the additional reason that it was untimely pursuant to MCR 3.602(J).

In an opinion and order, the trial court denied both motions, finding that they were premature.  The court noted that the arbitration agreement gives the arbitrator the authority to decide any disputed issues that are related to the arbitration and that the parties' dispute related to whether the agreement provides for an arbitration award for each separate case implicates an "interpretation" of the agreement, which is to be decided by the arbitrator.  Likewise, the trial court ruled that ATT's allegation of fraud is a "disputed issue" that also needs to be decided by the arbitrator.

ATT thereafter filed a motion with the arbitrator to vacate the arbitration award.  ATT argued that because plaintiff had no rights to Parcel 3, she had no standing to bring the forfeiture action on the 2004 land contract.  ATT continued, asserting that because plaintiff did not have standing, the arbitrator did not have jurisdiction.  ATT alternatively argued in the motion that if the ruling stands, Erin's rights in the property merged and he no longer had any interest in the 2004 land contract.

The arbitrator issued an opinion on October 19, 2023, addressing ATT's motion to vacate. Regarding jurisdiction, the arbitrator noted that because the district court had subject-matter jurisdiction over proceedings to recover possessions of premises, he also had jurisdiction.  And with respect to ATT's standing argument, the arbitrator ruled that by (1) failing to raise the issue in a motion brought under MCR 2.116(C)(5), (C)(8), or (C)(10), (2) failing to raise the issue as an affirmative defense, (3) filing a counterclaim against plaintiff, (4) agreeing to arbitrate the forfeiture case with plaintiff and participating in multiple proceedings, and (5) finally raising the issue more than a year after the arbitrator issued its decision, ATT waived the issue.  The arbitrator alternately ruled that because plaintiff was a vendor of the 2004 land contract, she had standing to have her rights, if any, adjudicated.[7]  Finally, with regard to ATT's argument that Erin's rights under the 2004 land contract merged with his rights under a later-filed warranty deed, the arbitrator ruled that the request was premature because "[i]t is best reserved for the quiet title action . . . and the partition action."

---

[6] Erin during these proceedings has been aligned with plaintiff.  Erin answered the complaint and agreed with every allegation.

[7] The arbitrator also ruled that assuming arguendo that plaintiff did not have standing, ATT conferred standing on her when they brought a counterclaim under the land contract against her in the arbitration proceedings.

On November 6, 2023, the arbitrator issued another opinion and order. The opinion addressed all five lawsuits. With respect to the forfeiture case, the arbitrator found that less than half the contract price had been paid by defendants and ordered closing to occur on December 4, 2023, with the redemption amount of $367,500 being paid to plaintiff via certified check and placed in escrow.

ATT moved for reconsideration of the arbitrator's October 19, 2023 opinion, but the arbitrator denied the motion because ATT merely presented the same issues already ruled upon.[8] The arbitrator further ruled that plaintiff is to present a proposed judgment.

ATT thereafter filed in the circuit court an emergency motion to vacate the arbitration award. ATT sought to vacate the various arbitration orders dated July 22, 2022, October 19, 2023, November 6, 2023, and November 20, 2023. ATT averred that they were entitled to relief because the arbitrator committed errors of law and exceeded his authority by requiring the following:

(1) requiring ATT to pay the redemption funds into escrow;

(2) requiring ATT to pay the redemption funds by December 4, 2023, when no judgment of forfeiture had yet been entered;

(3) requiring ATT to pay plaintiff when she no longer owned the property and could not provide a valid deed to ATT; and

(4) requiring that title be transferred to ATT and Erin, even though Erin refuses to pay any portion of the redemption amount and claims to already own the subject property.

The circuit court granted plaintiff's motion to confirm and denied ATT's motion to vacate. The court stated, in pertinent part:

And under [MCR] 3.602, as you well know I can confirm the award, I can modify it to correct any apparent errors on its face, or I can vacate it if there is fraud, duress, or any other undue means. I don't sit as a reviewing court either in fact or in law . . . . So, the Court is going to grant the motion to confirm the arbitration award under [MCR] 3.602. I do not believe that Judge Switalski has violated any law. He hasn't violated the arbitration agreement nor has he exceeded his powers. He has done an extraordinary job in light of the circumstances of these at least five or six cases and a difficult family situation involving property. Therefore, the judgment of possession after land contract forfeiture is hereby entered with the conditions as outlined in Judge Switalski's November 21, 2023 order. So, likewise, conversely the motion to vacate the award is respectfully denied.

---

[8] Although this opinion and order contains no date on it, ATT aver that it was issued on November 20, 2023.

The circuit court thereafter entered orders memorializing its rulings, and this appeal followed.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision to enforce, vacate, or modify an arbitration award." *City of Ann Arbor v AFSCME Local 369*, 284 Mich App 126, 144; 771 NW2d 843 (2009). Although this Court's review of the trial court's decision is de novo, this Court's review nonetheless is limited:

> An arbitrator's factual findings are not subject to review by this Court. On legal questions addressed by the arbitrator, this Court's review is not, strictly speaking, de novo . . . . Instead, this Court looks to whether the arbitrator's award rests upon an error of law of such materiality that it can be said the arbitrators exceeded their powers. This Court will not set aside an arbitration award unless it is clear that the arbitrator committed legal error *and* that, but for such error, a *substantially different award* must have been made. [*Kilpatrick v Lansing Community College*, 348 Mich App 44, 50; 17 NW3d 689 (2023) (quotation marks, citations, and brackets omitted), lv pending.]

However, any such error must be readily apparent on the face of the award without second-guessing the arbitrator's thought processes. *Eppel v Eppel*, 322 Mich App 562, 572; 912 NW2d 584 (2018).

## III. DISCUSSION

ATT argue that the trial court erred by denying their motion to vacate the arbitration award. We disagree.

### A. STANDING

ATT first contend that the trial court erred by failing to vacate the arbitration award because plaintiff lacked standing to bring the underlying forfeiture suit. The arbitrator determined that because ATT never raised the issue until more than a year after the arbitration award was issued, ATT waived the issue. Notably, the arbitrator alternately ruled that because plaintiff was a vendor of the 2004 land contract, she had standing to have her rights, if any, adjudicated. The arbitrator further reasoned that, assuming plaintiff lacked standing initially, the case was properly before him because ATT filed a counterclaim in the arbitration proceedings.

ATT assert that the arbitrator committed an error of law because the issue of standing "can be raised at any time." ATT's position is not persuasive. ATT rely on caselaw such as *Leite v Dow Chemical Co*, 439 Mich 920, 920 (1992). In *Leite*, the Supreme Court ruled that a defense asserting that the plaintiffs were not the real parties in interest need not be raised in a first responsive pleading and that the defense could be raised by motion "at any time." While MCR 2.116(D)(3) at the time *Leite* was decided provided that a defendant could move "at any time" under MCR 2.116(C)(8), see *Kemerko Clawson LLC v RXIV Inc*, 269 Mich App 347, 351; 711 NW2d 801 (2005); *Yee v Shiawassee Co Bd of Commr's*, 251 Mich App 379, 392 n 16; 651 NW2d

756 (2002), that rule was later amended. Now, the court rules have limited the expanse of the previous rule and provide the following:

> The grounds listed in subrule (C)(8), (9), and (10) may be raised at any time, unless a period in which to file dispositive motions is established under a scheduling order entered pursuant to MCR 2.401. It is within the trial court's discretion to allow a motion filed under this subsection to be considered if the motion is filed after such period. [MCR 2.116(D)(4).]

The record does not indicate what scheduling orders existed for arbitration, but it should be evident that the arbitrator deeming the issue waived when the issue of standing was raised more than a year after the arbitrator rendered his decision is consistent with this law.

Moreover, as ATT acknowledge, the defense is properly raised via motion. *Leite*, 439 Mich at 920. Indeed, "[a] motion based on such a defense would be within MCR 2.116(C)(8) or MCR 2.116(C)(10), depending on the pleadings or other circumstances of the particular case." *Id*. The arbitrator found that ATT never raised the issue in a motion brought under MCR 2.116(C)(5), (C)(8), or (C)(10). Accordingly, because ATT only raised the issue in a motion to vacate and not a summary-disposition motion, the arbitrator's ruling was consistent with the law.

## B. PAYMENT INTO ESCROW

ATT next argue that the arbitrator acted in violation of law when he ordered that they deposit into an escrow account the amount plaintiff was owed. ATT do not explain how them having to pay into an escrow account, in lieu of paying plaintiff directly, had any adverse, tangible effect. Assuming there was an error of law, "a substantially different award" would not have resulted had the arbitrator not ordered payment into escrow. In other words, if ordering ATT to pay into an escrow account was not permissible, the arbitrator simply could have ordered ATT to pay plaintiff directly, which is not a substantially different award and precludes any relief. *Kilpatrick*, 348 Mich App at 50.

## C. INCLUDING ERIN ON DEED

ATT finally argue that the arbitrator acted contrary to law when he ordered that, after redemption, Erin be included on the warranty deed from plaintiff, even though Erin declined to contribute toward the redemption amount.

ATT have identified no legal error that appears on the face of the award or any order. ATT assert that Erin made it "clear that he would not contribute to such redemption amount," and cites in support the arbitrator's November 6 and 20, 2023 orders. A review of these orders do not show that Erin in fact declined to make any contributions to the redemption. Moreover, accepting that Erin had declined to make any contributions, the trial court indicated that this particular issue is best addressed in the "quiet title" and "partition" cases that were still pending before the arbitrator. Because Erin was a vendee on the 2004 land contract, we fail to see how including him on the deed associated with that land contract was an error. The land contract had no provision for the situation when a vendee did not pay "his fair share." Instead, the contract treated the four vendees as a single entity and called them collectively, "Purchaser." And "[u]pon receiving payment in full of all sums owing," plaintiff had a contractual obligation to provide a warranty deed to

"Purchaser." There simply is no way through the contract to "cut out" a particular vendee. As the arbitrator recognized, ATT could raise this issue in other, more appropriate cases that were still pending. But related to matters of the forfeiture case, ATT have failed to show how the arbitrator committed any errors of law.

Affirmed. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219(A).

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Mariam S. Bazzi